## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| | : | |
| | : | |
| **v.** | : | **No. 20-222** |
| | : | |
| **ROBERT PAYNE** | : | |
| | : | |

**Kenney, J.**

### <u>MEMORANDUM</u>

Defendant Robert Payne brings this Motion To Set Bail (ECF No. 20) seeking release from custody after recently contracting COVID-19, arguing that his condition would be "better served by his release than his continued incarceration" and that there are conditions which would ensure the Defendant's appearance and the safety of the community. ECF No. 20 at 2–4. The Government opposes Defendant's Motion on the grounds that Mr. Payne's "condition appears well managed in a prison setting" and because his "criminal history, performance on supervision, as well as actions in this case all weigh heavily in favor of pre-trial detention." ECF NO. 21 at 1.

### I. BACKGROUND

On August 4, 2020 a grand jury indicted and charged Mr. Payne with knowingly and intentionally distributing and aiding and abetting the distribution of

heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. ECF No. 4.

The Government alleges that on or about October 22, 2018, law enforcement recorded a telephone call between Mr. Payne and a confidential source ("CS-1") discussing details of an illicit narcotics transaction to occur on the following day. ECF No. 21 at 2. On or about October 23, 2018, law enforcement, using CS-1, made a controlled purchase of 50 grams of heroin from Mr. Payne and his sister at Mr. Payne's residence. *Id.* Prior to the exchange, investigators set up fixed and mobile surveillance in and around the prearranged meeting location. *Id.*

CS-1 allegedly called Mr. Payne once he/she arrived at the location and Mr. Payne directed CS-1 to purchase the heroin from his sister, explaining that she sometimes distributes drugs on his behalf. *Id.* According to the Government, investigators observed CS-1 approach and enter the residence. *Id.* After a brief time, CS-1 exited the property and departed the area. *Id.* CS-1 reported to law enforcement that, while inside the property, Mr. Payne's sister sold him heroin in exchange for money on behalf of Mr. Payne. *Id.* The substance retrieved from CS-1 field-tested positive for heroin. *Id.* at 3. A laboratory test later confirmed the mixture weighed 50 grams and contained heroin and fentanyl. *Id.*

The Government filed its initial Motion for Pretrial Detention on September 29, 2020. ECF No. 11. Given the nature of Mr. Payne's charges, he is subject to a

rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there are no conditions or combination of conditions that could assure the safety of the community and Defendant's appearance at trial. Accordingly, after hearing argument on October 9, 2020, United States Magistrate Judge Timothy R. Rice ordered Mr. Payne detained pending trial. ECF No. 15. In his order, Judge Rice found that the government had proved by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required" and that "no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e)." ECF No. 16 at 1.

## II.    DISCUSSION

Mr. Payne filed the instant Motion for Bail on January 6, 2021. *See* ECF. No. 20. The Motion in essence requests this Court to overturn Judge Rice's October 9, 2020 order and set bail in light of Mr. Payne's recent COVID-19 infection and because the Defendant is neither a risk of flight nor a danger to the community. *Id*. at 3–4. This Court's review of a Magistrate Judge's bail determination is *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).

Under 18 U.S.C. § 3142(e), a court is obligated to order a defendant detained pending trial after a hearing and upon a finding that "no condition or combination

of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." A defendant is subject to a rebuttable presumption that he is a flight risk and dangerous where the court finds there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act punishable by ten or more years of imprisonment. *See* 18 U.S.C. § 3142(e)(3)(A).

Once the rebuttable presumption is established, it is the defendant's burden to produce evidence that he will appear as required and will not pose a threat to the community. *U.S. v. Carbone,* 793 F.2d 559, 560 (3d Cir. 1986). In assessing whether a defendant has rebutted that presumption, courts must consider the factors enumerated in 18 U.S.C. § 3142(g). It is the Government's burden to prove either by a preponderance of the evidence that he is a flight risk or by clear and convincing evidence that he poses a danger to the safety of the community. *United States v. Mastrangelo*, 890 F. Supp. 431 (E.D. Pa. 1995); *see also United States v. Perry,* 788 F.2d 100, 115 (3d Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

The Bail Reform Act also contains a "limited safety valve provision" under 18 U.S.C. § 3142(i) which allows the court to "re-examine detention decisions 'to the extent that the judicial officer determines such release to be necessary for

preparation of the person's defense or for another compelling reason.'" *United States v. Doe*, CR 18-315-11, 2020 WL 5167553, at *4 (E.D. Pa. Aug. 31, 2020) (quoting *United States v. Washington-Gregg*, No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020)). For bail motions premised on the COVID-19 pandemic, "this re-examination does not take place in isolation" and courts have evaluated the following factors: "(1) the specificity of the defendant's stated COVID-19 concerns, (2) the original grounds for the defendant's pretrial detention, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others." *Id.* at *4 (quoting *United States v. Carter*, No. 18-561-1, 2020 WL 3412571, at *6 (E.D. Pa. June 22, 2020)).

      A.     *Defendant's Motion for Bail*

      In his Motion, Mr. Payne argues that he should be granted pretrial release as he is "neither a risk of flight nor a danger to the community." ECF No. 20 at 3. To support that point, Mr. Payne notes that he is a lifelong resident of Philadelphia and provides financial and emotional support to his two children who also live here. *Id.* Mr. Payne also points out that he recently contracted COVID-19 while in FDC custody. *Id.* As a result of his illness, Mr. Payne believes that "both he and

5

the FDC jail population in general, would be for [sic] better served by his release than his continued incarceration." *Id.* at 3–4.

Mr. Payne was working prior to his detention and, "based on information and belief," could resume his job as a welder if released. *Id.* at 4. If released, Mr. Payne intends to reside in a home owned by his sister Patrice Walker and would agree to "house arrest with electronic monitoring." *Id.*

      B.    <u>The Government's Response in Opposition</u>

On January 20, 2020 the Government filed its Response in Opposition to Defendant's Motion to Set Bail. *See* ECF No. 21. The Government argues that Mr. Payne's release is not warranted for two reasons. First, because Mr. Payne's COVID-19 illness "appears well managed in a prison setting." *Id.* at 1. Second, because Mr. Payne's "criminal history, performance on supervision, as well as actions in this case all weigh heavily in favor of pre-trial detention." *Id.*

To support its first point, the Government argues that the question of whether to release a defendant in light of COVID-19 depends on "whether an inmate would be at risk, according to the CDC, for a severe outcome from COVID-19." *Id.* at 7. Though the Government does not argue that Mr. Payne's COVID-19 diagnosis eliminates all risk of reinfection, it does contend that "the large majority of courts to address the matter have concluded that the risk is

mitigated and compassionate release is not justified" where an inmate has received a COVID-19 diagnosis and apparently recovered without consequence. *See id.*

The Government then argues that Mr. Payne has failed to rebut the 18 U.S.C. § 3142(e) presumption in favor of detention. *See id.* at 9. Mr. Payne violated federal narcotics laws while on parole and despite having prior felony convictions for weapons and narcotics offenses.[1] *Id.* In the Government's view, the fact that Mr. Payne contracted COVID-19 does not rebut the strong statutory presumption of detention attached to Mr. Payne's charged crimes. *See id.*

C.     <u>Analysis</u>

The Bail Reform Act provides a presumption that Mr. Payne is a danger to his community and a flight risk. *See* 18 U.S.C. § 3142(e)(1). This rebuttable presumption is triggered where the court finds there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act punishable by ten or more years of imprisonment. *See* 18 U.S.C. § 3142(e)(3)(A). An indictment charging a defendant with such an offense is "sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness."

---

[1] In its initial Motion for Detention Pending Trial, the Government described Mr. Payne's prior criminal history as follows: "PAYNE has the following criminal history convictions: on October 14, 2014, PAYNE was convicted of unlawful possession of a firearm in Philadelphia County and sentenced to three to six years incarceration; on December 19, 2014, he was convicted of possession with intent to distribute heroin in Cape May County, New Jersey and sentenced to four years incarceration; on May 11, 2020, PAYNE was convicted of simple assault in Chester County and sentenced to three to 23 months incarceration." ECF No. 11 at 4.

*U.S. v. Sterling*, 459 F. Supp. 3d 673, 677–78 (E.D. Pa. 2020) (quoting *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)). The indictment here charges Mr. Payne with possession with intent to distribute a heroin, an offense that carries a maximum 20 years' imprisonment and is sufficient to trigger the rebuttable presumption. *See* ECF No. 4; *see also* 21 U.S.C. § 841(b)(1)(C).

With the rebuttable presumption triggered, the burden then shifts to Mr. Payne to "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Sterling*, 459 F. Supp. 3d at 678 (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)). In determining whether a defendant has rebutted the presumption for pretrial detention, a court must consider the factors enumerated in 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, health condition, community ties, resources, past conduct, and whether the person was on probation, parole, or other release at the time of the current offense or arrest; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4).

Mr. Payne is charged with dealing a 50-gram mixture of heroin and fentanyl. ECF 4. If convicted, the Government estimates that Mr. Payne faces a guidelines

8

range sentence of 92–115 months. ECF No. 11 at 1. The evidence detailed so far by the Government is strong—the Government states it has recordings of Mr. Payne discussing a drug buy with a confidential source; that law enforcement officers monitored Mr. Payne's home on the day of the scheduled buy and witnessed the confidential source enter the home and leave with drugs; and that the substance acquired from that confidential source tested positive for heroin and fentanyl. *See* ECF No. 21 at 2–3. Though the Government will need to present its findings at trial and subject to the Federal Rules of Evidence, the listed evidence is sufficient to link Mr. Payne to the sale of drugs at this stage.

Turning now to Mr. Payne's history and characteristics and potential danger to the community upon release, the Court finds it significant that Mr. Payne has several prior criminal convictions and was arrested for these charges while on parole for a state offense. *See id.* at 9; *see also United States. v. Doe*, CR 18-315-11, 2020 WL 5167553, at *6 (E.D. Pa. Aug. 31, 2020) (noting that the fact that defendant was arrested while on state parole was "[o]f great concern"). These factors, coupled with the fact that Mr. Payne facilitated the sale of a significant quantity of heroin and fentanyl, support a finding that Mr. Payne will pose a danger to the community if released.

The legislative history of the Bail Reform Act clarifies that the concept of dangerousness here should "'be given a broader construction than merely danger of

harm involving physical violence.' … The Congress was apparently concerned with the safety not only 'of a particular identifiable individual, perhaps a victim or witness,' but also of the community as a whole." *U.S. v. Delker*, 757 F.2d 1390, 1393 (3d Cir. 1985) (citation omitted). Mr. Payne was arrested for allegedly dealing heroin laced with fentanyl, a dangerous drug whose circulation undoubtedly endangers "the community as a whole."[2] That the Government's confidential source believed he was purchasing heroin and received heroin laced with fentanyl made this particular drug deal more dangerous because the presence of fentanyl significantly increases the risk of overdose death. The Court finds that the Defendant's release would significantly endanger the community, which strongly weighs in favor of Mr. Payne's continued detention.

The fact that Mr. Payne and his family are lifelong residents of Philadelphia and that he would submit to home confinement at his sister's home if released does not persuade this Court that he is likely to appear at trial or that he will not endanger the community upon release. The Court notes that the Defendant's sister participated in the alleged narcotics transaction, and it is unclear from the record whether this is the same sister who the Defendant is proposing he reside with. *See*

---

[2] According to the CDC, "[o]pioids were involved in 46,802 overdose deaths in 2018 (69.5% of all drug overdose deaths). Two out of three (67.0%) opioid-involved overdose deaths involve synthetic opioids" like fentanyl. *See Drug Overdose Deaths*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/drugoverdose/data/statedeaths.html (last visited Feb. 4, 2021).

10

ECF No. 20 at 3, 4; *see also United States v. Martinez*, No. 09-cr-155-6, 2010 WL
4751682, at *5 (E.D. Pa. Nov. 22, 2010) (finding house arrest with electronic
monitoring insufficient to rebut the presumption of dangerousness or possibility of
flight) (collecting cases).

The Third Circuit has explained that "testimony by co-workers, neighbors,
family physician[s], friends or other associates concerning the arrestee's character,
health, or family situation" may be adequate to rebut the presumption of detention.
*United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) (internal citations
omitted). Mr. Payne has proffered no such reassurances. The fact that Mr. Payne
believes he could resume employment as a welder does weigh in favor of release,
but employment alone is not enough, absent character testimony or other evidence,
to persuade this Court that the presumption has been rebutted. *See United States. v.
Carbone*, 793 F.2d 559, 561 (3d Cir. 1986) (finding defendant rebutted the
presumption where he had an offer of employment pending trial, was a first-time
offender, and several friends offered to mortgage their homes for his bail).

Considering these factors, this Court finds that there is no condition or
combination of conditions that will reasonably guarantee Mr. Payne's appearance
at trial or the safety of the community. The Defendant has not presented sufficient
evidence to rebut the 18 U.S.C. § 3142(e) presumption that no condition or

combination of conditions exist to ensure Defendant's appearance in court and the safety of the community.

The Court turns now to Section 3142(i) and Mr. Payne's position that the risks associated with the COVID-19 pandemic constitute a compelling reason for release. Considered against the Bail Reform Act's comprehensive statutory scheme, § 3142(i) is only a limited safety valve provision, "enabling courts to re-examine detention decisions 'to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.'" *United States v. Washington-Gregg*, No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020) (quoting 18 U.S.C. § 3142(i)). In the context of a motion for bail based on the current conditions of the COVID-19 pandemic, and courts have evaluated the following factors:

> (1) the specificity of the defendant's stated COVID-19 concerns, (2) the original grounds for the defendant's pretrial detention, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Carter*, 2020 WL 3412571, at *6 (listing cases). The Court will not necessarily weigh these factors equally, but will consider them as a whole in determining whether a "compelling reason" exists such that temporary release is "necessary." *Id.* at *6 (quoting *U.S. v. Denmark*, 1:19-CR-15, 2020 WL 1984306, at *6 (M.D. Pa. Apr. 27, 2020)). Further, the Third Circuit has stated that, "[t]he mere existence

of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

First, Mr. Payne's stated COVID-19 concerns are not sufficient to constitute a compelling reason for pretrial release. Courts have granted release where a defendant showed he has some underlying medical condition which placed him at a greater risk for death or other serious consequence if exposed to COVID-19. *See Carter*, 2020 WL 3412571, at *6 ("at a minimum[,] courts have typically required proof of a [d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)") (alteration in original) (internal quotations and citation omitted). Mr. Payne does not claim to have any medical condition that would place him at greater risk of COVID-19.[3] He claims only that, given his recent COVID-19 diagnosis, "both he and the FDC jail population in general, would be for [sic] better served by his release than his continued incarceration." ECF No. 20 at 3–4.

---

[3] The CDC has identified a number of conditions that place people at an increased risk of severe illness from COVID-19, including cancer, COPD, heart conditions such as heart failure, immunocompromised state, sickle cell disease, and type 2 diabetes. *See People at Increased Risk – People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 4, 2021).

13

Given the novelty of the COVID-19 disease, there is currently no medical consensus regarding whether someone who has tested positive for the virus will be protected from reinfection or for how long. *See Clinical Care Guidance (COVID-19)*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated Dec. 8, 2020) ("To date, limited data exist about reinfection with SARS-CoV-2 after recovery from COVID-19."). Courts are divided on what weight to give the risk of reinfection, with some finding that a previous COVID-19 diagnosis does not justify release[4] and others finding that a diagnosis should not prevent a finding of compelling reasons for release.[5] Ultimately, the chance of reinfection is too speculative to guide this Court's present analysis. Until our medical professionals reach a consensus, this Court will

---

[4] *See, e.g.*, *United States v. Rowland*, CR 18-00579-2, 2020 WL 7624946, at *2 (E.D. Pa. Dec. 21, 2020) ("This Court has only authorized pretrial release for a defendant at risk of COVID-19 reinfection where the defendant was at the 'highest risk' of severe illness from COVID-19 due to his medical conditions."); *United States v. Orozco*, 2020 WL 4201846, at *1 (D.N.M. July 22, 2020) ("A positive test by itself does not, however, qualify as a medical condition that provides an extraordinary and compelling reason for a sentence reduction."); *U.S. v. Manzo*, 2:07-CR-02042-LRS-2, 2020 WL 6786898, at *3 (E.D. Wash. Nov. 18, 2020) ("While Defendant is understandably concerned about the risk of infection or reinfection, a general fear of a virus which exists throughout society is not sufficiently extraordinary or compelling").

[5] *U.S. v. Walls*, 2:12-CR-00173, 2020 WL 6390597, at *10 (W.D. Pa. Nov. 2, 2020) ("the Court does not find that [defendant's] 'extraordinary and compelling' situation is diminished by the fact that he has already tested positive for the COVID-19 virus while in custody"); *U.S. v. Salley*, CR 19-688, 2020 WL 7024253, at *9 (E.D. Pa. Nov. 30, 2020) (find that the defendant's positive COIVD-19 test and the spread of COVID-19 in the Federal Detention Center where he was housed constituted "circumstances … warrant[ing] his pretrial release.").

14

weigh the risk of reinfection as it would the risk of initial infection. Given the fact that Mr. Payne identified no medical conditions that would place him at an increased risk of severe COVID-19 illness, this Court cannot find that his health concerns constitute a compelling reason for pretrial release.

Second, as discussed above, the original grounds for Mr. Payne's pretrial detention continue to support his detention today. Mr. Payne committed a serious violation of the Controlled Substances Act while on parole for state offenses. *See* ECF No. 21 at 9. He did not present any character testimony or other evidence to rebut the presumption that there are no conditions or combination of conditions that could assure the safety of the community and Defendant's appearance at trial that would justify release; and even if such testimony had been presented, it would have been presented against the conflicting and insurmountable hurdle of his prior actions and the alleged actions taken here while on parole as well as the other factors discussed herein.

Finally, neither party presented significant evidence regarding the extent to which Mr. Payne's proposed release plan is tailored to mitigate COVID-19 risks to the Defendant and the likelihood that the Defendant's proposed release would increase COVID-19 risks to others. Mr. Payne argues that "both he and the FDC jail population in general, would be for [sic] better served by his release than his continued incarceration" but does not explain how release to his sister's residence

15

would allow better treatment for his current illness or would mitigate his risk of contracting COVID-19 again in the future. ECF No. 20 at 3–4. Nor does the Government claim that releasing Mr. Payne to house arrest would contribute to COVID-19 spread.[6] Therefore, the third and fourth factors have a neutral effect on this analysis.

Considering these factors as a whole, Mr. Payne has not provided this Court with a compelling reason for release under 18 U.S.C. § 3142(i).  Though this Court is sympathetic to Mr. Payne's concerns about possible COVID-19 reinfection, he identified no health conditions that would put place him at a heightened risk for severe illness. When balanced against the seriousness of Mr. Payne's charges and the fact that he was arrested for the present charges while on state parole, Mr. Payne's concerns of contracting COVID-19 do not justify release.

## III.    CONCLUSION

Because the Defendant has failed to rebut the presumption that no condition or combination of conditions exist to ensure Defendant's appearance in court and the safety of the community, and has not provided this Court with a compelling

---

[6] In its brief, the Government states that "defendant contracted COVID-19 and, fortunately, apparently recovered without significant consequence." ECF No. 21 at 7. The likelihood that Mr. Payne's proposed release would increase the risk of COVID-19 transmission is "too speculative to be considered." *See United States v. Gongda Xue*, No. 18-122, 2020 WL 2307339, at *10, n.10 (E.D Pa. May 8, 2020) (noting that the likelihood that defendant's proposed release would increase COVID-19 risk to others is neutral in the Section 3142(i) analysis).

reason for release under 18 U.S.C. § 3142(i), the Court will deny Defendant Robert Payne's Motion for Bail. An appropriate order will follow.